Ex parte FRANCISCO OTERO, Petitioner.

No. 10824. Argued March 4, 1953.—Decided December 29, 1954.

V. Polanco de Jesús for appellant.

JUDGMENT

San Juan, Puerto Rico, December 29, 1954.

The order of the Superior Court, Arecibo Part, rendered on October 23, 1952 in the above-entitled case is affirmed.

---

It was so decreed and ordered by the Court as witness the signature of the Chief Justice.

Mr. Justice Belaval dissents.

A. CECIL SNYDER,
*Chief Justice.*

I certify:

IGNACIO RIVERA,
*Secretary.*

MR. JUSTICE BELAVAL, dissenting.

A child named Francisco Otero was born in the town of Ciales, Puerto Rico, on October 25, 1886. On November 8, 1886, the witness present at the birth of the child, José Colón González, appeared before the Official in Charge of the Civil Register of Ciales, Pedro Martorell, to register the child. The Registrar of Ciales recorded the following birth certificate:

"Number 93 . . . Francisco Otero. In the town of Ciales, Puerto Rico, on November 8, 1886, at 9:30 in the morning, by virtue of a statement presented to me by José Colón González, of adult age, single, farmer, born in Juana Díaz, Puerto Rico, resident of number . . . , . . . street, barrio of Cordillera, municipal district of Ciales, Puerto Rico, I, Pedro Martorell, Civil Registrar, record this birth certificate to the following effect:

"1. That at two o'clock in the morning of the twenty-fifth (25) day of October, in the year eighteen hundred and eighty-six (1886), in this town, a child was born of the white race to whom the name of Francisco was given.

"2. That this child is the illegitimate son of unknown parents.

"3. That the grandparents are unknown.

"4. That . . .

"5. That the declarant José Colón González made this statement in his character as a witness present . . . of the child' referred to.

"Juan Figueroa Robles, of adult age, single, farmer, born in Ciales, Puerto Rico, and resident of this town at number . . . and José Cristino Rivera Torres, single, farmer and resident of

this town at number . . . were the witnesses of this act. Both witnesses having read the recorded facts above, they swear that it is so, and all approve and ratify and those who know how sign this document, while I, the Civil Registrar do it for those who do not know how, at their request, and I so certify: Pedro Martorell."

This birth certificate was recorded in accordance with articles 20, 47 and 48 of the Spanish "Provisional Law of Civil Registry," Law No. 2, of June 17, 1870, and in accordance with article 34 of the Spanish Rules for the Execution of the Marriage Laws and Civil Registry, promulgated by Decree of December 13, 1870. The Law was extended to Puerto Rico by Royal Decree of January 8, 1884, and the Rules were extended by Royal Decree of November 6, 1884, with some modification of no significance to this case.

Articles 20, 47 and 48 of the Spanish "Provisional Law of Civil Registry" contain the following provisions:

"Art. 20.    All entries in the Civil Register must state:

1. The place, hour, day, month and year of recordation.

2. The name and surname of the official in charge of the Registry and of the official who acts at times as secretary.

3. The names, surnames, age, civil status, birth place, occupation or office, and the residence of the parties and of the witnesses present at the act.

4. The declaration and circumstances expressly required or permitted by these and other laws relating to each of the different types of registration; but not other declarations or circumstances which by observation, particular opinion or other motive would be believed convenient to assign to the judge or to any of his assistants."

"Art. 47.    The following persons in the order indicated are required to make the presentation and declarations provided for in successive articles of this law:

1. The father.

2. The mother.

3. The nearest relative of adult age who was present at the birth place at the time of verification.

4. The doctor or midwife who was present at the birth, *or in their absence any other person who may have been present.*

5. The head of the public establishment or the head of the household in which the birth occurred, if the birth took place in a house other than that of the parents.

6. With respect to abandoned infants, the person who may find them.

7. With respect to abandoned infants, the household head or the head of the establishment within whose district the abandonment has taken place.

"Art. 48. The registration of births in the Civil Register will state the facts required by Art. 20, and in addition, the following:

1. The document of the child's presentation.

2. The name, surname, age, birth place, residence and profession or office of the person who makes the presentation, and, according to art. 47 of this law, the family relationship or other motive which makes him responsible for the presentation.

3. The hour, day, month, year and place of birth.

4. The sex of the infant.

5. The name which has been or is going to be given the child.

6. The names, surnames, birth places, residence and profession or office *of the parents and of the maternal and paternal grandparents if they can be legally designated,* and their nationality if they should be aliens.

7. *The legitimacy or illegitimacy of the infant if it is known,* but, in the case of illegitimacy, without indicating whether they may be legally denominated natural sons and daughters."

Article 34 of the Spanish "Rules for the Execution of the Marriage Laws and Civil Registry" provides the following:

"Art. 34. In the registration of births there shall be compliance with the provisions of articles 20 and 48 of the Civil Registry law in the following manner:

1. To state age, birth place, residence and profession or office of the person mentioned in number 2 and 6 of article 48, there should be presented what is required in article 21 of these rules.

2. To express the sex of the infant, the word boy shall be used if a male, and girl shall be used if a female.

3. When the infant has already been named, the declarant will indicate what it is, but the Civil Registrar will not permit extravagant or improper personal names, nor permit surnames to be changed.

*When the child has no recognized parents, the Civil Registrar will give the usual name and surname which may not reveal or indicate his actual status.*

If the child is abandoned, and among the objects found with the child there should be some written paper indicating the child's name and surname, or some determined desire, it shall be respected if not inconvenient.

4. When twins are presented there will be a separate registration for each, indicating precisely and exactly the hour of birth of each if known; if unknown, the fact should be so stated in the registration.

5. With respect to persons named in birth certificates, there shall be no statement of titles or distinctions whose legal possession is not evident or may not be competently established in the document."

On August 12, 1952, that is, 66 years after the registration of the birth certificate corresponding to his birth, the petitioner Francisco Otero had recourse to the Superior Court of Puerto Rico, Arecibo Part, alleging that he is the illegitimate or natural son of the woman who, when living was known as Salvadora Otero, with whom he lived as a child, until the death of his mother, which occurred when petitioner was ten years of age; that he has been known since birth as Salvadora Otero's son, but because of the impediment of the laws existing at the time of his birth the person who registered him did not dare to make evident the names of petitioner's parents. By reason of the alleged facts the petitioner requested that his birth certificate state that Salvadora Otero is the natural or illegitimate mother of the petitioner and he offered testimonial evidence to prove his case in accordance with the second part of § 31 of Act No. 24, of April 22, 1931, as amended by Act No. 119, of April 26, 1950.

On September 5, 1952, the case was tried in the court below with the assistance of the prosecuting attorney. From the evidence the following facts were established: (1) that Eusebio Colón, being married to another woman, lived with Salvadora Otero by whom he had four children named José, María, Eusebio and the petitioner Francisco Otero; (2) that the petitioner was born in 1886 in the municipality of Ciales, Puerto Rico; (3) that the petitioner lived with his mother until her death more than forty years ago; (4) that the petitioner's birth certificate was prepared by José Colón González, a relative of Eusebio Colón.

The reason the Civil Registrar of Ciales, Pedro Martorell, had for registering the petitioner in 1886 as "the illegitimate son of unknown parents" was the prohibition in article 51 of the Spanish "Provisional Law of Civil Registry" which provided: "with respect to infants of illegitimate origin, it shall not be indicated in the Register who the father or the paternal grandparents may be, unless the father personally, or through a person authorized with special and authentic power, makes the presentation of the child with a declaration of his paternity. The same provisions apply with respect to indicating the name of the mother and the maternal grandparents." We know that, at that time, all children born out of wedlock who were not "natural" were considered illegitimate (bastards). Laws IX and XI de Toro: Commentaries on the Laws de Toro according to their spirit and of Spanish Legislation which deals with practical questions—Juan Álvarez Posadilla, (Fuentenebro Edition), (1883).

This prohibition was retained in § 15 of Act No. 61, of March 9, 1911, "An Act to establish a Law of Civil Register", which provided: "in respect to the newly born children of illegitimate origin, it shall not be necessary to state in the Register who the father or the paternal grandparents are, unless the father himself makes the declaration of birth

and paternity. The same procedure shall be observed as regards the statement of the mother's name and those of the maternal grandparents when the declaration of birth is made by the father alone." The same prohibition is retained, but only with respect to the father and mother and not the paternal and maternal grandparents, in § 20 of Act No. 24, of April 22, 1931, "The Vital Statistics Registry Act of Puerto Rico", which provides: "as regards newly-born children of illegitimate origin, it shall not be stated in the register who is the father, unless the father himself makes the declaration of birth and of his paternity. The same procedure shall be observed as regards the statement of the mother's name when the declaration of birth is made by the father alone." When § 20 was amended by Act No. 37, of November 21, 1941, the same prohibition was retained, since it involved an amendment by addition. But that prohibition disappeared when § 20 was amended again by Act No. 117, of May 12, 1943, where a totally new text is substituted which provides: "in the certificates of registration of birth issued by keepers of the register of vital statistics from and after the date of this Act, no information shall be entered concerning the legitimacy or illegitimacy of the birth, or concerning the civil status of the parents, even though such information may be on record in said registration, unless the applicant for the certificate should expressly require, after justifying the need therefor, that such information be included." Therefore, when the court below denied the petition to have the birth certificate amended there was no longer an express legal provision relating to the registration of infants of illegitimate origin prohibiting the indication of the name of the father or the mother unless the father or mother expressly acknowledged the child.

Now the true ground for the lower court's decision was not that prohibition, but "the court's understanding that it was an undoubted attempt to establish the petitioner's filiation to Salvadora Otero."

The question is: would an order to the Registrar of Vital Statistics of Puerto Rico to correct a birth record by including the name of the mother be equivalent in law to a declaratory judgment of filiation? Let us see.

Article 35 of the Spanish "Provisional Law of Civil Registry", in effect from 1844 until 1902, provides: "Birth, marriage and other acts of personal civil status which take place from the date this law commences *shall be proved by the records in the Register established to contain them*, provided that the records of the ecclesiastical Registrar containing the same documents shall continue to be considered public records. Acts which have taken place prior to this law shall be credited by means established by legislation in effect on the date indicated." This Spanish "Provisional Law of Civil Registry" of June 17, 1870, remained in force until the adoption of the Spanish Civil Code of 1888, extended to Puerto Rico by Royal Decree on July 31, 1889, which in article 327 provides: "The records of the registry shall be evidence of the civil status, and no other evidence shall be admitted unless such records have never existed or the books of the registry have disappeared *or the question arises in the course of litigation*," and article 332 which provides that "the law of June 17, 1870, shall continue in force in so far as not modified by the preceding articles."

During the period 1902 to 1911, § 319 of the Revised Civil Code of Puerto Rico was in effect. It provides: "The registry of civil status shall include the registrations or entries of births, marriages, emancipations, acknowledgments and legitimations, and deaths, and shall be in charge of the municipal judges in Puerto Rico," and § 323 which provides: "The special law regarding registries shall continue in force in so far as not modified by the preceding sections," (referring to the Spanish "Provisional Law of Civil Registry.")

After 1911 the first special Law of Civil Registry which is wholly Puerto Rican, Act No. 61 of March 9, 1911, was in force, § 1 of which, as amended by Act No. 46 of March 7, 1912, provides: "Acts concerning the civil status of persons shall be recorded in the register kept for such purpose, which shall be known as the Civil Register." The Civil Code of 1930, on the other hand, provides in § 250 that "the records in the registry shall be evidence of the civil status, and any other evidence can be admitted only when such records have never existed or the books of the registry should have disappeared or *when a litigation is instituted before the courts.*" But when Act No. 24, of April 22, 1931, "An Act making the necessary provisions for the registration of births, marriages and deaths, and for the other purposes", known as the "Vital Statistics Registry Act of Puerto Rico" which expressly repealed "Act No. 61, of March 9, 1911, as subsequently amended, and all laws, or parts of laws, decrees or resolutions in conflict herewith", was adopted, it provided in § 38: "On petition of any interested person, the Commissioner of Health, or a person by him authorized, shall furnish a certified copy of any birth, marriage or death certificate which has been recorded or registered in the general registry in accordance with the provisions of this Act . . . *a copy of the record* of any birth, marriage or death, after being certified by the Commissioner of Health or by any person by him authorized, *shall constitute prima facie evidence* before all courts of justice of the facts set forth therein . . ." This provision remains unchanged through all the amendments which have been made in § 38 by Act No. 25, of April 17, 1936, Act No. 112, of May 6, 1941, Act No. 99, of May 12, 1943, and Act No. 188, of May 2, 1951.

There is no doubt then that since the passage of the Vital Statistics Registry Act of Puerto Rico the birth certificate has lost its conclusive character as a document sufficient to prove the civil status of a person. It became a *prima facie*

document which means its sufficiency is recognized until the true facts of filiation are established by another type of proof. On reflection it is evident that this method is the most scientific as well as the most practical way of settling problems arising from the public registration of civil status. As a matter of fact, the registry of births is compiled through oral information supplied by interested parties, at times by persons who are not the progenitors. It could be dangerous to concede a conclusive character to a document which is compiled through oral information from only one party. As a question of reality, it is important for a political or legal order to have an easy system of registration of births, marriages, deaths, as well as of other legal acts which define the civil status of a person, for purposes of census taking, military conscription, electoral registration, or statistical services.

Since the contents of the document merely constitute prima facie evidence of the fact of birth and of the civil status of the person registered, it is undeniable that by a birth registration nothing is irrevocably established or binding against the public interest or the interest of third persons, and we should not feel fearful that any registration, rectification, correction, addition, or amendment of an earlier registration in the Vital Statistics Registry will be equivalent to a declaratory judgment of filiation.

With respect to the procedure for the correction of errors in a birth registration, one should note § 18 of the Spanish "Provisional Law of Civil Registry" which provides: "once a registration is signed, no correction, addition or alteration of any kind can be made except by the writ of a competent court issued after hearing the proper public officials *and interested persons.* This writ shall be recorded in the Register where the mistake has been committed, and the new entry which the court has ordered will state the date, the judgment in which it was decided, the resolution which it con-

tains, and the date of presentation to the civil registrar for recordation. Both at the margin of the writ and of the corrected registration a succint note of cross reference will be written."

The Royal Order of January 17, 1872, "clarifying article 18 of the Law, the manner of correcting errors committed in the registration of documents, sealed paper, stamp payments —8 Alcubilla: *Diccionario de Administración* 285 and 308 (Fourth Edition of J. López Camacho, Madrid), (1887)— clarifies still further the procedure which must be followed in cases of corrections, additions or changes: •

"Considering that although article 18 provides that once signed a registration cannot be corrected, added to or altered except by writ of a competent court after hearing the proper public officials and interested persons, this provision does not refer to immaterial errors in recording a name or surname, or any other word or phase which does not change the essence of the registration, or affect directly or indirectly the civil status of the person registered, but is understood to include matters of such urgency that can only refer to changes, corrections and modifications which affect the essence of the registration or the civil status of the person.

"Considering that this article should not be interpreted so as to achieve an absurd result such as would ensue if it should be necessary in correcting minor spelling errors in names or words, such as writing "Pedro" for "Pablo," to hold a trial in which the decision would correct the error committed, and in addition, such a procedure would be costly and dilatory, and against the spirit and tendency of express law;

"H. M. the King (May God Keep Him), agreeing with the report of this Board, has deigned to declare as a general rule:

"1. That what is provided in article 18 of the Law of Civil Registry refers to *corrections, additions or alterations which in any way affect the essence of the registration or the civil status or condition of the person registered.*

"2. That all other immaterial errors which are noted after the signing of the registration, consisting of mistakes in writing a name, surname, date, word or phrase, may be corrected before the same municipal judge who is responsible for the Civil

Register in which the registration was made. The judge will require such proof as the particular case seems to require, and will issue the necessary decree indicating the nature of the error. This decree will be copied at the margin of registration entry and will be signed by the judge, the secretary, the person who began the proceeding, and if possible, the person who made the first declaration, or if he could not sign, any other who signed at his request.

"3. No excise shall be collected for the petition to make the aforesaid declaration, and the interested parties shall supply the official stamp to be affixed. (Gaceta of January 20)".

When Act No. 61, of March 9, 1911, "An Act to establish a Law of Civil Register", was approved it provided in § 6: "After a record has been signed, no correction, addition or amendment can be made therein which may substantially alter the act to which the same refers, except upon a proper order made by a district court. This judgment shall be recorded in the Register, placing at the margin of the corrected registration and also of the new registration a brief note for mutual reference". The description of the procedure contained in § 18 of the Spanish Law was omitted, but a procedure before the former district courts was provided.

When Act No. 24 of April 22, 1931, known as the Vital Statistics Registry Act of Puerto Rico was approved it provided in § 31 that "omissions or defects appearing on any certificate before being registered in the Department of Health may be corrected by inserting in red ink the necessary corrections or additions in said certificate, but after the same has been filed in the Department of Health, no *correction*, addition, or amendment substantially altering it, shall be made thereon unless by virtue of an order of a district court, which order, in such case, shall be filed in the Department of Health, reference to be made to the certificate to which it corresponds." Once again the description of the procedure contained in article 18 of the Spanish Law was

omitted, but a procedure before the former District Courts was provided.

In the amendment to § 31 of the Vital Statistics Registry Act of Puerto Rico by Act No. 119, of April 26, 1950, there is described the procedure which must be followed to obtain an order from the former District Court to make any correction, addition or amendment. That law provides: "to obtain said order the interested party shall file a petition in the district court of his domicile, setting forth under oath and duly substantiating his pretension; after the petition is filed and the evidence submitted is heard in open court, with the assistance of the district attorney, the court shall issue the proper order; the order authorizing the rectification or amendment of an entry in the old Civil Registry shall be recorded by annotation made in due form on the margin of the registration so rectified; the rectification or amendment of, or addition to, a certificate already filed in the General Registry of Vital Statistics shall be made by inserting therein the corrections, additions or amendments authorized by the court. Such crossing out as may be necessary shall be made in such manner that the cross-out word is always legible." As one can see, the Legislature of Puerto Rico has once again incorporated the old procedure of article 18 of the Provisional Law of Civil Registry of June 17, 1870, with respect to all corrections, additions, or alterations in a record of birth registered in the old Civil Register.

As one can see, there is provision for a special procedure in which the correction of a public register as a question of public interest between the state and a citizen may be examined. A procedure is therefore followed which is totally independent of any plenary action to obtain a declaration of rights of filiation against other persons. With respect to former illegitimate children, while the prohibition against recording the names of the parents and of the paternal and maternal grandparents in the Civil Registry

726

or in the General Registry of Vital Statistics was still in force, we agree that it would have been impossible to use this procedure to make any correction, addition or amendment referring to the parents of illegitimate or natural children. But after the amendment which was made in article 20 of the Vital Statistics Registry Act of Puerto Rico, there is no longer any reason why this procedure cannot be used to correct an error recorded in the old Civil Register with respect to the natural origin of the petitioner. It should be understood, then, that such a correction does **not** constitute a judicial declaration of rights of filiation which could affect the rights of third parties, nor does it deny the opportunity for refutation by any interested party: *Juan Bigas, Sucrs.* v. *Industrial Commission,* 71 P.R.R. 313, 319, Negrón Fernández (1950) ; *Estate of Félix Matos,* 63 P.R.R. 972, 978 *et seq.* Todd, Jr. (1944) ; *Quiñones* v. *Galeno,* 53 P.R.R. 343, 345, *et seq.* (Wolf).

The decision below should be reversed and an order issued correcting the entry requested by the petitioner.